UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ASHAN FERNANDO and MEGAN FERNANDO,
      Plaintiffs,


      v.                                    CIVIL ACTION NO.
                                            18-10504-MBB


FEDERAL INSURANCE CO., and CHUBB
GROUP OF INSURANCE COMPANIES
d/b/a CHUBB PERSONAL INSURANCE
d/b/a CHUBB MASTERPIECE INSURANCE,
      Defendants.


**MEMORANDUM AND ORDER RE:**
**PLAINTIFFS' MOTION TO AMEND COMPLAINT**
**(DOCKET ENTRY # 9)**

**May 28, 2019**


**BOWLER, U.S.M.J.**


      Pending before this court is a motion to amend a complaint

filed by plaintiffs Ashan Fernando and Megan Fernando

("plaintiffs") under Fed. R. Civ. P. 15(a) ("Rule 15(a)") to add

three new defendants in lieu of defendants Chubb Group of

Insurance Companies d/b/a Chubb Personal Insurance d/b/a Chubb

Masterpiece Insurance. (Docket Entry # 9). Defendant Federal

Insurance Company ("Federal") and proposed defendants Chubb

National Insurance Co. ("Chubb National"), the Chubb Corporation

("Chubb Corp."), and Chubb Insurance Company of New Jersey

("Chubb New Jersey") (collectively "proposed defendants") oppose
the motion. (Docket Entry ## 10, 14). After conducting a
hearing, this court took the motion (Docket Entry # 9) under
advisement.

BACKGROUND

Like the original complaint, the proposed amended complaint
alleges that Federal and the proposed defendants failed to
"fulfill their obligations and to make payment of a covered
claim under" a valuable articles insurance policy ("the Policy")
issued by Federal. (Docket Entry ## 1, 9-1). The Policy's
coverage encompassed loss by theft for itemized jewelry items
insured under the Policy for December 11, 2015 to December 11,
2016 time period. (Docket Entry # 9-1).

Because the parties rely on documents extrinsic to the
Policy to support or refute the futility of the causes of
action, it is helpful to outline the Policy's provisions. The
Policy itself states on two different pages that it consists of
a "Coverage Summary" and the "entire Masterpiece Policy."
(Docket Entry # 10, pp. 19, 22).[1] More specifically, the
"Introduction" defines the "Policy [as] "mean[ing] your entire
Masterpiece Policy, including the Coverage Summary and any
Mortgagee's Coverage Summary." (Docket Entry # 10, p. 22). The

---

[1]  Page numbers refer to the docketed page in the upper right-
hand corner of a filing.

2

same "Introduction" page in the Policy likewise states, "This is your Chubb Masterpiece Policy.  Together with your Coverage Summary, it explains your coverages and other conditions of your insurance in detail."  (Docket Entry # 10, p. 22).  The Policy also includes an "Itemized Articles" page, which lists various items of jewelry covered under the Policy.  (Docket Entry # 10, p. 20); (Docket Entry # 10, p. 23) ("[t]he amount of coverage . . . for each itemized article[] is shown in your Coverage Summary").[2]  In light of the foregoing language in the Policy, the Policy includes the "Coverage Summary," the "Itemized Articles," and the "Introduction" followed by the language of Policy.  (Docket Entry # 10, pp. 19-20, 22-40).  In addition, a "Table of Contents" for the Policy confirms the contents of the Policy as the "Introduction," a "Valuable Articles Coverage," (presumably the "Itemized Articles" page), the "Policy Terms," and a "Policy Information Notice."[3]  (Docket Entry # 10, p. 21).

Separate from the Policy, a cover letter from "Chubb Personal Insurance" to plaintiffs states that, "This mailing contains information about your new insurance policy with Chubb."  (Docket Entry # 10, p. 12).  The cover letter

---

[2]  During the Policy term and as reflected in a "Coverage Update" section, plaintiffs added two more itemized articles for an additional premium.  (Docket Entry # 10, pp. 39-40).
[3]  Hence, the Policy also includes the "Important Notice" page. (Docket Entry # 10, p. 18).

identifies and attaches various documents for plaintiffs to
review including a "Premium Summary," a "Privacy Notice," and a
"Premium Discount Summary."[4]  (Docket Entry # 10, p. 12).  The
cover letter also includes language that describes "Chubb Group
of Insurance Companies" as a "marketing name."  (Docket Entry #
10, p. 12).  Viewing the above language defining the "Policy" as
the "entire Masterpiece Policy" and the "Coverage Summary,"
neither this cover letter (Docket Entry # 10, p. 12) nor another
cover letter (Docket Entry # 10, p. 13) or the "Premium
Summary," the "Privacy Notice," and the "Premium Discount
Summary" form part of the actual Policy.[5]  (Docket Entry # 10,
pp. 14-17).

    Turning to the facts surrounding the claim as set forth in
the proposed amended complaint, plaintiffs' house was
burglarized on or about the evening of March 18, 2016, and
several items of jewelry covered under the Policy were taken.

---

[4]  The parties rely on these filings to support their arguments
regarding the futility or the plausibility of the claims in the
proposed amended complaint, including the argument by Federal
and the proposed defendants that the proposed defendants are not
parties to the Policy.

[5]  That said, as explained below, even including these documents
(the two cover letters, the "Premium Summary," the "Privacy
Notice," and the "Premium Discount Summary") as part of the Rule
15(a) record because they are either part of the Policy itself
or are interlocking documents properly considered as a unified
whole with the Policy, the language in these documents does not
give rise to plausible claims in counts I and II against the
proposed defendants.

(Docket Entry # 9-1, p. 5, ¶ 23).  Plaintiffs filed a police report with the local police and shortly thereafter filed a claim with "defendants"[6] for the covered loss which has been "continuously denied."  (Docket Entry # 9-1, pp. 5-6).

The police report recounts that video from a home security system reflects that a "male subject in a grey sweatshirt is seen in the hall of the home" and describes a broken window used "to gain access to the home."  (Docket Entry # 9-1, p. 46).  The police report denotes the missing items as "stolen" and the incident as "still under investigation."  (Docket Entry # 9-1, p. 46).  The investigation by Federal and the proposed defendants "did not conclude with any information sufficient to deny the" claim.  (Docket Entry # 9-1, p. 6, ¶ 33).

Federal and the proposed defendants denied the claim for several reasons, including that a "jeweler who signed the Appraisals was prohibited by the conditions of his probation from engaging in the jewelry business."  (Docket Entry # 9-1, p. 7, ¶ 36).  Upon information and belief, Federal and the proposed defendants attended a probation violation hearing for the jeweler to confirm that he "conducted the Appraisals."  (Docket

---

[6]  The proposed amended complaint defines "defendants" as "[t]he Chubb Entities and Federal."  (Docket Entry # 9-1, p. 3, ¶ 9). The "Chubb Entities" are defined as "Chubb Corp., Chubb National and Chubb New Jersey," i.e., the proposed defendants.  (Docket Entry # 9-1, p. 3, ¶ 8).

Entry # 9-1, p. 7, ¶ 43).  During the hearing, a different
individual testified that *he* was the appraiser as opposed to the
above-noted jeweler.  (Docket Entry # 9-1, pp. 7-8).  The court
agreed inasmuch as it did not issue "a probation condition
violation" against the jeweler for engaging in the jewelry
business.  (Docket Entry # 9-1, pp. 7-8, ¶¶ 36, 44).  Also upon
information and belief, Federal and the proposed defendants had
an affidavit from this individual "confirming that he,
individually, performed the Appraisals."  (Docket Entry # 9-1, ¶
42).

On or about April 20, 2016, plaintiffs sent a formal demand
letter ostensibly pursuant to section 11 of Massachusetts
General Laws chapter 93A ("chapter 93A") and Massachusetts
General Laws chapter 176D ("chapter 176D") to "defendants."[7]
(Docket Entry # 9-1, pp. 6, 49-51).  Plaintiffs sent a second
formal demand letter pursuant to chapter 93A and chapter 176D on
September 1, 2017 but "defendants"[8] "refused to make payments
under the Policy or provide a good faith offer" to plaintiffs.
(Docket Entry # 9-1, pp. 8, 53-55).

---

[7]  The formal demand letter does not specify from which entity
plaintiffs sought relief but is addressed to Chubb Personal
Insurance and to the attention of Jacquelyn A. Rider ("Rider").
(Docket Entry # 9-1, p. 49).
[8]  The second formal demand letter does not specify from which
"defendants" plaintiffs sought relief but was addressed to
Parenteau & O'Hara, P.C. presumably as counsel to "Chubb."
(Docket Entry # 9-1, p. 53).

The Policy includes a provision requiring plaintiffs "to bring" an action "within two years of the date of loss."[9] (Docket Entry # 9-1, p. 23). Massachusetts also has a two-year statute of limitations, which Federal and the proposed defendants submit applies to the Policy. See Mass. Gen. Laws ch. 175, § 99 ("section 99").[10] Plaintiffs maintain that if section 99 applies, the proposed amended complaint relates back to the date of the original, timely-filed complaint under Rule 15(c)(1)(C) because the proposed defendants received notice and will not be prejudiced. (Docket Entry ## 9, 13).

PROCEDURAL BACKGROUND

Plaintiffs commenced this action when they filed the original complaint on March 16, 2018, two days before the expiration of the two-year limitations period "from the time the loss occurred" on March 18, 2016 with the theft of itemized articles from their home. On or about April 11, 2018, counsel

---

[9] The Policy states, "You agree not to bring legal action against us unless you have first complied with all conditions of this policy. You also agree to bring any action against us within two years of the date of loss." (Docket Entry # 9-1, p. 23). Plaintiffs argue that they "filed suit against Chubb prior to the two-year anniversary of the date of the loss" and the claims against "Chubb" are therefore timely under the Policy's "date of loss" provision. (Docket Entry # 13).

[10] Section 99 states that, "No suit or action against this company for the recovery of any claim *by virtue of this policy* shall be sustained in any court of law or equity in this commonwealth unless *commenced within two years from the time the loss occurred*." Mass. Gen. Laws ch. 175, § 99 (emphasis added).

for Federal and the proposed defendants sent plaintiffs'
attorney an email stating that "Chubb Group of Insurance
Companies" is no longer used and "was never an entity,
corporation, partnership, unincorporated association, or
insurance company." (Docket Entry # 9-2). Thereafter, on July
3, 2018, plaintiffs filed the motion seeking leave to amend the
complaint. (Docket Entry # 9).

The proposed amended complaint (Docket Entry # 9-1) makes
no changes to the factual allegations and the legal claims in
the original complaint. (Docket Entry # 1). Rather, the
proposed amended complaint seeks to replace defendants Chubb
Group of Insurance Companies d/b/a Chubb Personal Insurance
d/b/a Chubb Masterpiece Insurance (the "Chubb Entities") with
the proposed defendants on the basis that the naming of the
Chubb Entities was a "misnomer." (Docket Entry # 9).
Plaintiffs do not assert any new claims specific to the proposed
defendants. Like the original complaint, the proposed amended
complaint asserts the following claims: (1) breach of contract
(Count I); (2) breach of the implied covenant of good faith and
fair dealing (Count II); and (3) unfair and deceptive acts and
practices under section 11 of chapter 93A and chapter 176D
(Count III).[11] (Docket Entry # 9-1). The original complaint and

---

[11] Count III in the proposed amended complaint identifies *only*
section 11 of chapter 93A as the basis for the claim. (Docket

the proposed amended complaint assert jurisdiction based on diversity. (Docket Entry ## 1, 9-1); 28 U.S.C. § 1332(a)(1).

Federal and the proposed defendants oppose the motion on the basis of untimeliness and futility. (Docket Entry ## 10, 14). They argue that plaintiffs are seeking to add new defendants, not merely rectify a mistake concerning the identity of the proper parties after the applicable limitations period expired. (Docket Entry # 10, p. 7). They assert that if "[n]one of the [proposed] defendants are parties to [the Policy]," the proposed amended complaint is futile. (Docket Entry # 10, p. 4). If, on the other hand, the proposed defendants are "subject to the terms and conditions" of the Policy, the two-year limitations period in the Policy as well as the applicable statute of limitations under section 99 render

---

Entry # 9-1, ¶ 61) (citing section 11). Nowhere does it mention section nine. (Docket Entry # 9-1, ¶¶ 60-66). It is true that the proposed amended complaint attaches two demand letters even though a section 11 claim does not require the prerequisite of a demand letter. See Petedge, Inc. v. Fortress Secure Solutions, LLC, Civil Action NO. 15-11988-FDS, 2016 WL 407065, at *2 (D. Mass. Feb. 2, 2016) (section 11 "does not require a demand letter"). Count III itself refers only to section 11 (Docket Entry # 9-1, ¶¶ 60-66) and the demand letters, although they each include two references to section nine, are captioned as seeking relief under section 11, not section nine. (Docket Entry # 9-1, pp. 49-53, 55). The plain language of the proposed amended complaint therefore raises only a section 11 claim. See Cortés-Rivera v. Dep't of Corrs. and Rehab. of the Commonwealth of Puerto Rico, 626 F.3d 21, 28 (1st Cir. 2010) (examining "plain language" of complaint and its structure to determine if it raised a claim).

the "claims against the [proposed] defendants" untimely,
according to Federal and the proposed defendants. (Docket Entry
# 10, p. 4) (Docket Entry # 14, p. 4).

DISCUSSION

Rule 15(a) instructs that leave to amend a complaint
"'shall be freely given when justice so requires." Foman v.
Davis, 371 U.S. 178, 182 (1962) (internal citation omitted).
"[T]he grant or denial of an opportunity to amend is within the
discretion of the District Court" but absent a showing of "undue
delay, bad faith" or "futility of amendment" should not be
denied. Id.

## I. Futility

Even if the relation back requirements under Rule 15(c) are
met, Federal and the proposed defendants contend that the claims
against the proposed defendants are futile because "[n]one of
the [proposed] defendants are parties to [the Policy]" or
"involved in the underwriting, adjustment or handling of the
plaintiffs' claim."[12] (Docket Entry # 10, pp. 4-5) (Docket Entry

---

[12] Federal and the proposed defendants also note that Chubb
Corp. is no longer a legal entity as of January 15, 2016 when it
merged with ACE INA Holdings Inc. and became Chubb INA Holdings,
Inc. (Docket Entry # 10, p. 5). As explained below, Federal
and the proposed defendants' argument that Chubb Corp. is not a
party to the Policy is correct as to counts I and II thereby
obviating the need to address the foregoing futility argument
except as to Count III. As to Count III, i.e., the chapter 93A
claim, the argument does not merit dismissal because it relies
on an affidavit to establish that Chubb Corp. "is not a legal

10

# 14, p. 4).  Plaintiffs maintain that the argument "that Chubb

has had no relationship to the [p]laintiffs" and "was not

involved in the handling of the claim is without merit."

(Docket Entry # 13, p. 2).

It is well settled that futility constitutes an adequate

basis to deny amendment.  See Universal Commc'ns Sys., Inc. v.

Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007); Maine State

Bldg. and Construction Trades Council, AFL-CIO v. United States

Dep't of Labor, 359 F.3d 14, 19 (1st Cir. 2004).  "In assessing

futility, the district court must apply the standard which

applies to motions to dismiss under [Rule 12(b)(6)]."  Adorno v.

Crowley Towing and Transp. Co., 443 F.3d 122, 126 (1st Cir.

2006).  "'In assessing futility, the district court must apply

the standard which applies to motions to dismiss under Fed. R.

Civ. P. 12(b)(6).'"  Morgan v. Town of Lexington, MA, 823 F.3d

737, 742 (1st Cir. 2016) (citation omitted).  To survive a Rule

12(b)(6) motion to dismiss, the complaint must include factual

allegations that when taken as true demonstrate a plausible

---

entity" and "has not existed since January 15, 2016."  (Docket
Entry # 10, ¶ 7).  As explained below, in adjudicating the
futility of a proposed amendment a court may only consider
documents external to the proposed complaint that fall within
certain narrow exceptions applicable to review under Fed. R.
Civ. P. 12(b)(6) ("Rule 12(b)(6)").  See Jaundoo v. Clarke, 690
F. Supp. 2d 20, 22 (D. Mass. 2010).  These exceptions do not
encompass the affidavit.  Put another way, neither the proposed
amended complaint nor the documents that comprise the rest of
the Rule 15(a) record support the argument.

claim to relief even if actual proof of the facts is improbable. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-558 (2007); see, e.g., Kenney v. State Street Corp., Civil Action No. 09-10750-DJC, 2011 WL 4344452, at *2 (D. Mass. Sept. 15, 2011) (applying Rule 12(b)(6) Twombly standard in assessing futility of proposed amendment).

In conducting a futility analysis, this court's review is confined to the proposed amended complaint and the attached documents (Docket Entry # 9-1) as well as external documents that fall into certain narrow exceptions applicable to review of a Rule 12(b)(6) motion to dismiss. See Jaundoo v. Clarke, 690 F. Supp. 2d at 22 (recognizing, in context of motion to amend based on futility, that court may not consider documents "outside of the [proposed amended] complaint, or not expressly incorporated therein" unless they fall within an "exception 'for documents sufficiently referred to in the complaint'") (brackets in original) (internal citation omitted); accord In re Atl. Power Corp. Sec. Litig., Civil Action No. 13-10537-IT, 2015 WL 13679766, at *4 (D. Mass. Oct. 21, 2015) (in considering Rule 12(b)(6) or Rule 15 motion, "court may properly consider 'only facts and documents that are part of or incorporated into the complaint'") (citation omitted); Leahy-Lind v. Maine Dep't of Health and Human Servs., Civil Action No. 13-00389-GZS, 2014 WL 4681033, at *10 n.6 (D. Me. Sept. 19, 2014); see also Newman v.

Lehman Bros. Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018) (in reviewing motion to dismiss, court may consider "'documents the authenticity of which are not disputed by the parties; official public records; documents central to the plaintiff's claim; and documents sufficiently referred to in the complaint'") (ellipses, brackets, and citations omitted).  In opposing the motion to amend, Federal and the proposed defendants filed a number of documents extraneous to the proposed amended complaint.  Turning to each of the documents, it is appropriate to consider the Policy, which is central to the claims and referenced in the proposed amended complaint.  It is also appropriate to consider the court decisions attached to Federal and the proposed defendants' opposition (Docket Entry # 10, pp. 46-49) and sur-reply (Docket Entry # 14, pp. 26-29) as documents subject to judicial notice.  See Mississippi Pub. Employees' Ret. System v. Boston Sci. Corp., 523 F.3d 75, 86 (1st Cir. 2008) ("'sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss'" include "'matters of which a court may take judicial notice'") (internal citations omitted); see, e.g., Bluetarp Fin., Inc. v. Matrix Constr. Co., Inc., 709 F.3d 72, 78 n.4 (1st Cir. 2013) (taking "judicial notice that neither the South Carolina state-court case or the Maine state-court case has gone to final judgment"); Ezra Charitable Trust v. Tyco

Int'l, Ltd., 466 F.3d 1, 9 n.7 (1st Cir. 2006).[13]  Neither the letters by Federal's counsel and plaintiffs' counsel (Docket Entry # 10, pp. 42, 44-45) (Docket Entry # 14, pp. 10-22, 24-25) nor the affidavits by Daniel I. Jaeger (Docket Entry # 10, pp. 51-52) and Rider (Docket Entry # 14, p. 8), however, fall within one of the recognized exceptions and, accordingly, are not part of the record in examining the futility of the proposed amended complaint.

A.  Breach of Contract

Plaintiffs allege Federal and the proposed defendants breached the Policy by:  (a) denying coverage for the claim; (b) failing to make payment for the covered loss under the Policy; and (c) conducting an investigation for the loss in an unfair and deceptive manner.  (Docket Entry # 9-1, ¶¶ 48-52).  As previously noted, Federal and the proposed defendants submit that Federal issued the Policy and "[n]one of the [proposed] defendants are parties to [the Policy]."  (Docket Entry # 10, p. 4).  Plaintiffs maintain that certain statements in the Policy and in various documents extraneous to the Policy refute

---

[13]  A factual finding by one court that the Chubb Group of Insurance Companies "is a trade style used to described several separately incorporated" companies (Docket Entry # 14, pp. 26, 28), however, does not establish this as a fact in this case or warrant judicial notice.  See generally Fed. R. Evid. 201; see Getty Petroleum Marketing, Inc. v. Capital Terminal Co., 391 F.3d 312, 321-322 (1st Cir. 2004) (Lipez, Circuit Judge, concurring).

Federal's and the proposed defendants' argument that none of the proposed defendants are parties to the Policy.[14] (Docket Entry ## 9, 13).

As stated in the proposed amended complaint, "Chubb Corp. is the parent company of Federal" and "Chubb National and Chubb New Jersey are subsidiaries of Federal." (Docket Entry # 9-1, ¶ 8). The Policy denotes Federal as the company that issued the Policy. (Docket Entry # 10, pp. 19-20).

A viable breach of contract claim requires the existence of "a valid contract between the parties."[15] Bose Corp. v. Ejaz, 732 F.3d at 21. As explained below, Federal is a party to the Policy because it issued the Policy, as stated in the Coverage Summary of the Policy and the list of Itemized Articles in the Policy, and the Policy unequivocally states it is a contract between plaintiffs and Federal. (Docket Entry # 10, pp. 19-20, 22, 39-40). The determination of whether the proposed

---

[14] Plaintiffs rely, in part, on correspondence that refers to Rider's "chubb.com" email address. Their reliance is misplaced because the correspondence is extraneous to the proposed amended complaint and does not fall within one of the aforementioned narrow exceptions under Rule 12(b)(6). See Newman v. Lehman Bros. Holdings Inc., 901 F.3d at 25; Jaundoo v. Clarke, 690 F. Supp. 2d at 22.

[15] More completely, a breach a contract claim "requires the plaintiff to show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013).

defendants are parties to the Policy entails an interpretation of the Policy.

Under Massachusetts law, interpretation of an insurance policy adheres to "'the general rules of contract interpretation, beginning with the actual language of the polic[y], given its plain and ordinary meaning.'" Easthampton Congregational Church v. Church Mut. Ins. Co., 916 F.3d 86, 91 (1st Cir. 2019) (internal citation omitted); AIG Prop. Cas. Co. v. Cosby, 892 F.3d 25, 27 (1st Cir. 2018) (same); accord Metro. Prop. and Cas. Ins. Co. v. Morrison, 951 N.E.2d 662, 671 (Mass. 2011) ("interpretation of language in an insurance contract 'is no different from the interpretation of any other contract,'" with words construed "'in their usual and ordinary sense'") (citation omitted). A court interprets words in an insurance "policy in light of their plain meaning, considering the document as a whole." Sanders v. Phoenix Ins. Co., 843 F.3d 37, 42 (1st Cir. 2016); accord 116 Commonwealth Condominium Trust v. Aetna Cas. & Surety Co., 742 N.E.2d 76, 78 (Mass. 2001) (words in insurance policy are "construe[d] in their usual and ordinary sense'") (internal citation omitted). "'Every word'" is "'"presumed to have been employed with a purpose and must be given meaning and effect whenever practicable."'" Metro. Prop. and Cas. Ins. Co. v. Morrison, 951 N.E.2d at 671 (internal citations omitted).

The "construction must be consistent with what an objectively reasonable insured, reading the relevant policy language, would expect the words to mean." Sanders v. Phoenix Ins. Co., 843 F.3d at 42; see Metro. Prop. and Cas. Ins. Co. v. Morrison, 951 N.E.2d at 671 ("'[i]f in doubt, [a court] "consider[s] what an objectively reasonable insured, reading the relevant policy language, would expect to be covered"'") (internal citations omitted). In the event "this analysis yields two reasonable (but conflicting) interpretations of the policy's text, the insured must be given the benefit of the interpretation that redounds to his benefit." Sanders v. Phoenix Ins. Co., 843 F.3d at 43; see AIG Prop. Cas. Co. v. Cosby, 892 F.3d at 27 ("'[a]mbiguity exists when the policy language is susceptible to more than one meaning'") (internal citation omitted); United States Liab. Ins. Co. v. Benchmark Constr. Servs., Inc., 797 F.3d 116, 119-20 (1st Cir. 2015) ("[i]f a term is 'susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one,' the term is ambiguous") (internal citation omitted); Certain Interested Underwriters at Lloyd's, London v. Stolberg, 680 F.3d 61, 66 (1st Cir. 2012) ("policy provision 'is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one'") (internal citation omitted). Thus, when

presented with ambiguous language, the policy is construed "in

favor of the insured and against" the insurer.  <u>Metro. Prop. and</u>

<u>Cas. Ins. Co. v. Morrison</u>, 951 N.E.2d at 671.  Moreover,

"'extrinsic evidence may not be admitted to contradict the clear

terms of an agreement, or to create ambiguity where none

otherwise exists.'"  <u>Blais v. Hartford Fire Ins. Co.</u>, Civil

Action No. 08-40221-FDS, 2011 WL 1303135, at *8 (D. Mass. March

30, 2011) (interpreting insurance contract and applying

Massachusetts law) (internal citations and brackets omitted).[16]

With respect to language within the Policy, plaintiffs rely

on the references to "Chubb & Son Inc." in the copyright notices

---

[16]  The court in <u>Blias</u> succinctly and cogently summarizes the
relevant principles in the event of an ambiguity in a policy as
follows:

> If the insurance contract is ambiguous, the Court's
> analysis shifts in three important ways.  First, the Court
> may consider extrinsic, factual evidence "bearing upon the
> background and purpose of the parties, as well as their
> understanding of the meaning of particular language used in
> the contract." *USM Corp.*, 28 Mass. App. Ct. at 116, 546
> N.E.2d 888; *see Affiliated FM Ins. Co. v. Constitution
> Reinsurance Corp.*, 416 Mass. 839, 842, 626 N.E.2d 878
> (1994); *Keating v. Stadium Management Corp.*, 24 Mass. App.
> Ct. 246, 249, 508 N.E.2d 121 (1987).  Second, any doubts
> about a term's meaning must be resolved in favor of the
> insured.  *Boston Gas Co.*, 454 Mass. at 356, 910 N.E.2d 290;
> *County of Barnstable v. Am. Fin. Corp.*, 51 Mass.App.Ct.
> 213, 215, 744 N.E.2d 1107 (2001); *see August A. Busch & Co.
> v. Liberty Mut. Ins. Co.*, 339 Mass. 239, 243, 158 N.E.2d
> 351 (1959).  Finally, where a term is ambiguous, its
> interpretation becomes a question of fact.

<u>Blais v. Hartford Fire Ins. Co.</u>, 2011 WL 1303135, at *8
(footnotes omitted).

appearing at the bottom of each page of the Policy (Docket Entry # 10, pp. 19-20, 22-40) and to a statement in the "Introduction" that "This is your Chubb Masterpiece Policy." (Docket Entry # 9-1, p. 22) (Docket Entry ## 9, 13). Examining the language and the Policy as a whole to determine if Federal and/or each of the proposed defendants is a party to the Policy, the Policy states that, "This policy is a contract between you and us." (Docket Entry # 10, p. 22). A few lines below this language is the definition of "us" as well as "[w]e," both of which "mean the insurance company named in the Coverage Summary." (Docket Entry # 10, p. 22). Federal is the only insurance company named in the coverage summary. (Docket Entry # 10, p. 19). In the context of this straight-forward language, the fact that the same page includes the statement "This is your Chubb Masterpiece Policy" does not yield two reasonable and conflicting interpretations that "Chubb" is also a party. Similarly, an objectively reasonable insured would not view the fine-printed copyright notices at the bottom of the Policy's pages with the name "Chubb & Son Inc." as affecting the meaning of the Policy's language that "This policy is a contract between you," i.e., plaintiffs, "and us," i.e., Federal. Simply stated, the latter language is not susceptible to more than one meaning.

Furthermore, the Coverage Summary, the Itemized Articles, and the "Important Notice" within the Policy uniformly denote

the Policy as "Issued by Federal Insurance Company." (Docket
Entry # 10, pp. 19-20, 39-40). The Policy does not mention
Chubb New Jersey or Chubb Corp. and the only reference to Chubb
National is on the signature page in the context of stating that
Federal "caused this [P]olicy to be signed by its authorized
officers, but this policy shall not be valid unless also signed
by a duly authorized representative of the company." (Docket
Entry # 10, p. 37). Accordingly, the plain language of the
Policy unambiguously establishes that Federal is the contracting
party that issued the Policy and that none of the proposed
defendants is a party to the insurance contract. Given the
absence of an ambiguity in the Policy's language on its face or
as applied, it is not appropriate to rely on documents extrinsic
to the Policy to contradict or change the written terms which
define the contract as between "you," i.e., plaintiffs and "us,"
defined as the "insurance company named in the Coverage Summary"
(Docket Entry # 10, p. 22), which is Federal. See Gruber v.
Hartford Accident & Indem. Co., Civil Action No. 18-10341-NMG,
2018 WL 5309796, at *3 n.5 (D. Mass. Aug. 27, 2018) (citations
omitted); Blais v. Hartford Fire Ins. Co., Civil Action No. 08-
40221-FDS, 2011 WL 1303135, at *8; General Convention of the New
Jerusalem in the United States of America, Inc. v. MacKenzie,
874 N.E.2d 1084, 1087 (Mass. 2007) ("extrinsic evidence may be
admitted when a contract is ambiguous on its face or as applied

to the subject matter," however, "[t]he initial ambiguity must exist") (allowing motion to dismiss given absence of ambiguity).

Plaintiffs nonetheless submit that statements extrinsic to the Policy consisting of the Premium Summary and cover letters as well as language in other documents extraneous to the Policy provide a basis to amend the complaint to name Chubb New Jersey, Chubb National, and Chubb Corp. as defendants. Plaintiffs assert that these various statements support a finding that "Chubb has been involved since the onset" and "has been in charge of the handling of the [p]laintiffs' claim." (Docket Entry # 13).

The statements plaintiffs rely on in the Premium Summary are "your Chubb Masterpiece Policy," the "Chubb Group of Insurance Companies," and "[t]hank you for insuring through Chubb." (Docket Entry # 10, p. 14). Plaintiffs also point to statements in the cover letters that read "[t]his mailing contains information about your new insurance policy with Chubb," and "Chubb" offers "a fast and convenient way to receive your Chubb policy via email." (Docket Entry # 10, pp. 12-13). They also cite the copyright notices that appear in fine print at the bottom of the pages in the aforementioned cover letters and the Premium Summary that refer to "Chubb & Sons Inc." (Docket Entry # 10, pp. 12-14).

First and foremost, plaintiffs' reliance on the Premium
Summary and the cover letters to change or contradict the
unambiguous terms in the Policy is misplaced.  See Blais v.
Hartford Fire Ins. Co., 2011 WL 1303135, at *8.  Second, even
reading the Premium Summary, the cover letters, and the Policy
as interlocking documents to effectuate the intention of the
parties, see Matthews v. Planning Bd. of Brewster, 892 N.E.2d
797, 803 (Mass. App. Ct. 2008) ("interlocking documents that are
part of a single transaction and are interrelated in purpose,
must be read together to effectuate the intention of the
parties") (internal citations, quotation marks and brackets
omitted); accord Fed. Deposit Ins. Corp. v. Singh, 977 F.2d 18,
21 (1st Cir. 1992), or construing the Premium Summary and the
cover letters as part of the Policy itself, amendment to include
the proposed defendants in Count I is not appropriate.

Elaborating upon the second premise, an objectively
reasonable insured reading these references to Chubb and the
language that states the Policy "is a contract between you"
(defined as plaintiffs in the Coverage Summary) and "us"
(defined as Federal in the Coverage Summary) would not view the
references in the Premium Summary and cover letters as giving
rise to a reasonable interpretation that "Chubb" is a
contracting party.  Both of the cover letters confirm that the
Policy is "Issued by: Federal Insurance Company."  (Docket Entry

# 10, pp. 12-13).  Further, one of the cover letters not only includes the language "your new insurance policy with Chubb," but also depicts "Chubb" as "the marketing name used to refer to the insurance subsidiaries of The Chubb Corporation."  (Docket Entry # 10, p. 12).  A privacy notice referenced in this cover letter contains the same language and then immediately lists more than a dozen "Chubb companies," two of which are Chubb New Jersey and Chubb National.  Here again, an objectively reasonable insured would not interpret this language to reasonably mean he or she was contracting with all of these entities, let alone only Chubb New Jersey and Chubb National.  Nor would an objectively reasonable insured interpret language describing an entity as a marketing name to mean the actual insurer and contracting party.  The copyright notices at the bottom of the cover letter are just that, copyright notices as opposed to an identification of a contracting party.  Finally, the Premium Summary thanking plaintiffs "for insuring through Chubb" and enclosing "your Chubb Masterpiece Policy" cautions "[y]our policy includes a Coverage Summary and policy provisions that explain your coverage in more detail."  (Docket Entry # 10, p. 14).  An objectively reasonable insured would not read the foregoing language in these documents (the Premium Summary, cover letters, Privacy Notice, and the Policy) to mean that any of the proposed defendants are parties to the insurance

contract.  Rather, the Policy unequivocally states it is "a
contract between you and us," "us" is further defined as Federal
(Docket Entry # 10, pp. 19, 22), and the Policy explicitly and
repeatedly denotes it is "[i]ssued by Federal."  (Docket Entry #
10, pp. 19-21, 39).  Accordingly, Federal and plaintiffs were
the contracting parties.

As previously mentioned, plaintiffs also rely on a number
of extraneous third-party documents that are not part of the
proposed amended complaint or within one of the aforementioned
narrow exceptions.  See Jaundoo v. Clarke, 690 F. Supp. 2d at
22; Leahy-Lind v. Maine Dep't of Health and Human Servs., 2014
WL 4681033, at * 10 n.6.  These documents include language
identifying Rider's e-mail address as "jrider@chubb.com," a
"Sworn Statement in Proof of Loss" directed "to Chubb," and a
"Cancellation Request/Policy Release" listing "Chubb Insurance
Company."  (Docket Entry # 9, ¶ 10).  Because these documents
are not part of the record when examining the futility of the
proposed amended complaint, see Jaundoo v. Clarke, 690 F. Supp.
2d at 22, they are not considered.  Assuming for purposes of
argument that the proposed amended complaint sufficiently refers
to a January 20, 2017 denial letter (Docket Entry # 9-1, ¶¶ 36,
45, 51) drafted on "Chubb" letterhead, the "Chubb" letterhead
does not alter the interpretation of the Policy.  The first
three sentences state that *Federal* "has carefully considered

24

your claim," "Federal has determined that there is no liability," and "Federal is denying your claim." (Docket Entry # 14, p. 14).

Finally, although there is no direct authority applying Massachusetts law, a decision that applies Georgia law concludes that a "'sister company'" of the insurance company that issued the policy and handled the insurance claim was *not* liable on the policy because it was not a party to the policy. <u>Johnson Landscapes, Inc. v. FCCI Ins. Co.</u>, No. 1:06-CV-2525-WSD, 2007 WL 4258233, at *7-8 (N.D. Ga. Nov. 30, 2007) (noting "[i]t is black letter law that" the sister company "cannot be held liable for the breach of a contract to which it was not a party and did not assent"). Similarly, a parent of an insurance company that issued an insurance policy is not liable because it did not enter into a contract with the insured. <u>See</u> <u>Moore Group, Inc. v. Singletary</u>, 386 S.E.2d 411, 412 (Ga. Ct. App. 1989) (applying Georgia law). As previously noted, Chubb Corp. is the parent of Federal and Chubb National and Chubb New Jersey are subsidiaries of Federal. (Docket Entry # 9-1, ¶ 8). Moreover, the fact that the insured received correspondence regarding the claim on the parent's letterhead did not create liability for breach of the policy. <u>See</u> <u>id.</u> Plaintiffs' similar argument that the denial letter "was written on Chubb letterhead" is equally unavailing.

In sum, the terms of the Policy belie liability on the part of Chubb Corp., Chubb National, or Chubb New Jersey as parties to the insurance contract. The Policy identifies Federal as the contracting party that issued the Policy. (Docket Entry # 10, pp. 12-13, 22). Chubb Corp., Chubb National, and Chubb New Jersey are all separately incorporated entities. (Docket Entry # 9-1, ¶¶ 5-8). Absent a basis to pierce the corporate veil, they are not parties to the Policy and, hence, are not liable for its breach. See Hebert v. Allied Signal, Inc., 577 So. 2d 1117, 1120 (La. Ct. App. 1991) (applying Louisiana law). Thus, for example, the court in Herbert rejected liability against an entity (Crum & Forster) because "[a] reading of the insurance policy clearly shows that Crum & Forster is not the insurer nor did it issue the business auto policy" and the policy described Crum & Forster "as a 'capital stock company,' a separately incorporated holding company comprised of several companies, including U.S. Fire," the insurance company that issued the policy. Id.

Here, the circumstances do not present a basis to pierce the corporate veil. "'It is a general principle of corporate law "deeply 'ingrained in our economic and legal systems' that a parent corporation is not liable for the acts of its subsidiaries."'" Scala v. FedEx Freight, Inc., 264 F. Supp. 3d 352, 355 n.2 (D. Mass. 2017) (quoting Kraft Power Corp. v.

<u>Merrill</u>, 981 N.E.2d 671, 677 (Mass. 2013)) (ellipses omitted).
As expressed by the Massachusetts Supreme Judicial Court
("SJC"), common ownership of stock together with common
management, standing alone, does not give "rise to liability on
the part of one corporation for the acts of another
corporation." <u>My Bread Baking Co. v. Cumberland Farms, Inc.</u>,
233 N.E.2d 748, 751-752 (Mass. 1968). Indeed, ownership of all
the stock in a number of corporations "'"by one person does not
create a single unit to justify a disregard of separate
corporations."'" <u>Callahan & Sons, Inc. v. Dykeman Elec. Co.,
Inc.</u>, 266 F. Supp. 2d 208, 232 (D. Mass. 2003) (quoting <u>Gordon
Chem. Co. v. The Aetna Casualty and Surety Co.</u>, 266 N.E.2d 653,
657 (Mass. 1971)).

The proposed amended complaint states that, "Chubb Corp. is
the parent company of Federal" and "Chubb National and Chubb New
Jersey are subsidiaries of Federal." (Docket Entry # 9-1, ¶ 8).
The SJC in <u>My Bread Baking</u> summarizes the general principles
applicable to assessing whether to disregard the entities of
two, separately formed corporations. <u>See</u> <u>My Bread Baking Co. v.
Cumberland Farms, Inc.</u>, 233 N.E.2d at 752. Disregarding two
corporate entities with common stock and management is
particularly apt:

> (a) when there is active and direct participation by the
> representatives of one corporation, apparently exercising
> some form of pervasive control, in the activities of

27

another and there is some fraudulent or injurious consequence of the intercorporate relationship, or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.

Id.; accord Birbara v. Locke, 99 F.3d 1233, 1238 (1st Cir. 1996) (same).

Here, Federal and the proposed defendants are each separately incorporated companies that share the common marketing name "Chubb." (Docket Entry # 9-1, ¶¶ 5-8). The proposed amended complaint is bereft of facts indicating pervasive control, a fraudulent intercorporate relationship, confused intermingling, or ambiguity in the manner and capacity in which the various entities acted. See Hebert v. Vantage Travel Serv., Inc., Civil Action No. 17-10922-DJC, 2019 WL 1440400, at *8 (D. Mass. Apr. 1, 2019)(denying amendment as futile because, "[o]ther than conclusory allegations regarding Lewis's ownership and control of the corporations at issue, the proposed amended complaint is devoid of specific facts that support piercing the corporate veil as it pertains to Lewis"). In sum, given the unambiguous terms of the Policy denoting Federal as contracting party that issued the Policy to plaintiffs, the breach of contract claim against the proposed defendants is futile as none of the proposed defendants are parties to the contract.

B.  Covenant of Good Faith and Fair Dealing

Plaintiffs also bring the aforementioned claim for breach
of the implied covenant of good faith and fair dealing by
Federal and the proposed defendants for:  "(a) wrongfully
refusing to acknowledge its coverage obligations and to make an
offer of settlement in a reasonable time;" (b) "asserting
coverage defenses without reasonable bases;" and (c) conducting
an investigation as a means to intimidate and/or harass
Plaintiffs and/or Plaintiffs' family members, friends and
acquaintances."  (Docket Entry # 9-1, p. 9, ¶ 54).  Federal and
the proposed defendants submit the claim is futile because,
inter alia, the proposed defendants are not parties to the
insurance contract.

"Under Massachusetts law, a covenant of good faith and fair
dealing is implied in every contract."  Shaulis v. Nordstrom,
Inc., 865 F.3d 1, 16 n.7 (1st Cir. 2017).  A breach of the
covenant "exists only where there is an enforceable contract
between the parties."  Burnett v. Flagstar Bank, Civil Action
No. 11-40074-TSH, 2012 WL 3257884, at *1 (D. Mass. Aug. 7,
2012); accord QLS Logistic Servs., LLC v. JAWS Assocs., LLC,
Civil Action No. 17-11891-ADB, 2018 WL 5816342, at *5 (D. Mass.
Nov. 6, 2018) ("[t]o establish a breach of the covenant of good
faith and fair dealing, a plaintiff must prove that there
existed an enforceable contract between the two parties"); see

29

Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 129–30 (1st Cir. 2006) ("[h]aving concluded that no contract exists, there can be no derivative implied covenant of good faith and fair dealing applicable to these parties"). "'[T]he scope of the covenant is only as broad as the contract that governs the particular relationship.'" FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 100 (1st Cir. 2009) (internal citations omitted); Chokel v. Genzyme Corp., 867 N.E.2d 325, 329 (Mass. 2007).

As determined in Count I, the only parties to the Policy are plaintiffs (the insured) and Federal (the insurer that issued the Policy). To impose liability on the proposed defendants is beyond the scope of the insurance contract inasmuch as they are not parties to the Policy. Inasmuch as the scope of the covenant is only as broad as the insurance contract, the breach of the implied covenant of good faith and fair dealing claim is futile as to the proposed defendants.[17]

C.  Chapter 93A

Plaintiffs next allege that Federal and the proposed defendants engaged in unfair and deceptive acts and practices in violation of chapter 93A and chapter 176D by deliberately and

---

[17]  In light of the futility of the breach of contract and the breach of the implied covenant of good faith and fair dealing claims, it is not necessary to address Federal and the proposed defendants' alternative argument to dismiss these claims as untimely.

maliciously: "(a) failing to effectuate a prompt, fair and equitable settlement of plaintiffs' claim despite liability being reasonably clear; (b) refusing to pay Plaintiffs' Claim without conducting a reasonable investigation; and (c) asserting coverage defenses without a reasonable or good faith basis." (Docket Entry # 9-1, ¶ 62). Federal and the proposed defendants maintain the claim is futile because the proposed defendants are not parties to the Policy and were not involved in plaintiffs' insurance claim. Federal and the proposed defendants do not identify or mention the standard of misconduct that rises to the level of a chapter 93A violation, let alone raise an argument that their conduct does not violate that standard. As a result and solely with respect to the motion to amend the complaint, they waive the argument that the conduct alleged in the proposed amended complaint does not constitute egregious misconduct or rascality in violation of section 11. See Vallejo v. Santini-Padilla, 607 F.3d 1, 7 n.4 (1st Cir. 2010) ("[p]laintiffs have not cited a single authority in support of their assertion that their failure to timely oppose the motion to dismiss did not constitute waiver" and noting that "[p]laintiffs did not properly raise their arguments below"); see also Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010) ("district court was 'free to disregard' the state law argument that was not developed in Coons's brief"). Rather, they submit

that the proposed defendants are not parties to the Policy and were not "involved in the underwriting, adjustment or handling of the plaintiff's claim." (Docket Entry # 10, p. 4). They further maintain that the chapter 93A claim is based solely on Federal's denial of coverage under the Policy and therefore untimely under the two-year limitations period in section 99. (Docket Entry ## 10, 14).

For background, this court outlines section 11 liability in the context of chapter 176D. Overall, chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). Chapter 176D sets forth a number of unfair settlement practices on the part of insurance companies. See Mass. Gen. Laws ch. 176D, § 3(9); Ora Catering, Inc. v. Northland Ins. Co., 57 F. Supp. 3d 102, 109-110 (D. Mass. 2014). To proceed against an insurer on the basis of a violation of section 3(9) of chapter 176D, an insured must bring a claim under either section nine or 11 of chapter 93A. See Bearbones, Inc. v. Peerless Indem. Ins. Co., Civil Action No. 3:15-30017-KAR, 2017 WL 4678195, at *16 (D. Mass. Oct. 17, 2017); accord Silva v. steadfast Ins. Co., 35 N.E.3d 401, 405 (Mass. App. Ct. 2015); see also Pariseau v. Albany Intern. Corp., 822 F. Supp. 843, 845 (D. Mass. 1993) (finding chapter 176D, standing alone, does not confer a private right of action).

In the case at bar, plaintiffs bring their claim under section 11.[18] "[U]nlike consumer claims under Chapter 93A, § 9, a violation of Chapter 176D constitutes only probative evidence, not per se proof, of egregious business misconduct for a Chapter 93A, § 11 business-to-business claim." Peabody Essex Museum, Inc. v. U.S. Fire Ins. Co., 802 F.3d 39, 55 (1st Cir. 2015); accord Bearbones, Inc. v. Peerless Indem. Ins. Co., 2017 WL 4678195, at *16. "To be actionable" under section 11, "the challenged conduct must rise to the level of an 'extreme or egregious' business wrong, 'commercial extortion,' or similar level of 'rascality' that raises 'an eyebrow of someone inured to the rough and tumble of the world of commerce.'" Peabody Essex Museum v. U.S. Fire Ins. Co., 802 F.3d at 54 (citing Baker v. Goldman, Sachs & Co., 771 F.3d 37, 49-51 (1st Cir. 2014); see Meadows at Mainstone Farm Condo. Tr. v. Strathmore Ins. Co., Civil Action No. 16-12546-MBB, 2018 WL 4696745, at *21-22 (D. Mass. Sept. 28, 2018) (discussing insurance company's section 11 liability and citing Peabody, 802 F.3d at 54-55).

As noted above, Federal and the proposed defendants argue that the chapter 93A claim is futile because none of the proposed "defendants are parties to the insurance contract" and they were not "involved in the underwriting, adjustment, or

---

[18]  See footnote 11.

handling of the plaintiffs' claim." (Docket Entry # 10, p. 4).
With respect to the former argument, "privity is not required to
maintain an . . . action under [Chapter] 93A." Standard
Register Co. v. Bolton-Emerson, Inc., 649 N.E.2d 791, 794 (Mass.
App. Ct. 1995) (citation omitted); Speakman v. Allmerica Fin.
Life Ins., 367 F. Supp. 2d 122, 142 (D. Mass. 2005) (finding it
"well-settled that 'privity is not required'" under chapter 93A,
"except in actions based on breach of warranty") (quoting
Standard Register, 649 N.E.2d at 794). Indeed, "a [c]hapter 93A
claim can be brought against a party" that only had "an indirect
legal or business relationship" with plaintiffs. Speakman v.
Allmerica Fin. Life Ins. & Annuity Co., 367 F. Supp. 2d at 142.
As discussed below, the proposed amended complaint reflects the
involvement of the proposed defendants in the settlement
practices. The mere fact that they are not parties to the
insurance contract therefore does not render the section 11
chapter 93A claim futile.[19]

Next, Federal and the proposed defendants argue they had no
involvement in underwriting, adjusting, or handling plaintiffs'

---

[19] Plaintiffs as well as Federal and the proposed defendants
again rely on documents outside the proposed amended complaint,
such as affidavits, the letter to the Berkeley Police
Department, and letters to Rider. The documents do not fall
within one of the narrow exceptions and are therefore not part
of the record subject to review by this court. See Jaundoo v.
Clarke, 690 F. Supp. 2d at 22.

insurance claim.  As explained by the court in <u>Speakman</u>, "a corporation's parents, subsidiaries, and other affiliates are not liable for the actions of the corporation under Chapter 93A unless they played an *active role* in the alleged wrongful conduct."  <u>Speakman v. Allmerica Fin. Life Ins. & Annuity Co.</u>, 367 F. Supp. 2d at 142 (emphasis added).

Here again, Federal and the proposed defendants rely on documents outside the confines of the Rule 15(a) record to establish the fact that they did not write the Policy, they had no relationship with plaintiffs, and they lacked involvement in the underwriting, handling, and adjusting of plaintiffs' claim. The proper vantage point to gauge futility is the facts in the proposed amended complaint and the documents that fall within one of the narrow exceptions allowing their consideration. Turning to the task, the factual allegations in the proposed amended complaint are directed collectively at Federal and the proposed defendants.[20]  (Docket Entry # 9-1).  The proposed amended complaint asserts that the "investigation did not conclude with any information sufficient to deny [p]laintiffs' claim" yet Federal and the proposed defendants "refused to make payment under the Policy."  (Docket Entry # 9-1, p. 6, ¶¶ 33, 35).  Meanwhile, the police report states that the home's video

---

[20]  See footnote six.

security system showed an intruder with a grey sweatshirt in plaintiffs' home during the time when plaintiffs were out for the evening. The sergeant completing the police report also observed a broken window in the rear of the home indicating the suspect used the window "to gain access to the home." (Docket Entry # 9-1, p. 46). Plaintiffs reported that a small safe with itemized jewelry was missing.

The proposed amended complaint also states that Federal and the proposed denied plaintiffs' claim because "the jeweler who signed the Appraisals was prohibited by the conditions of his probation from engaging in the jewelry business." (Docket Entry # 9-1, ¶ 36). Federal and the proposed defendants, however, knew that this jeweler did not sign the appraisals because, "[u]pon information and belief," they had an affidavit from the actual appraiser who confirmed that he "performed the [a]ppraisals of the Insured Jewelry."[21] (Docket Entry # 9-1, ¶ 42). In addition, Federal and the proposed defendants "were present at [the] probation violation hearing" during which the actual appraiser testified that he conducted the appraisals. (Docket Entry # 9-1, ¶¶ 43- 44). The investigation undertaken by Federal and the proposed defendants did not establish that

---

[21] "'Upon information and belief' signifies that 'allegations are "based on secondhand information that the asserting party believes to be true."'" <u>Menard v. CSX Transp., Inc.</u>, 698 F.3d 40, 44 n.5 (1st Cir. 2012) (brackets omitted).

"[p]laintiffs were not the owners of the Insured Jewelry."
(Docket Entry # 9-1, ¶ 33).  These facts specifically tie the
proposed defendants, albeit as a group along with Federal, as
taking an active role in the investigation and denial of the
insurance claim.

    The court in Speakman found a complaint plausible even
though the bulk of the allegations addressed the misconduct of a
defendant corporation that had contractual relationships with
the plaintiff insurance agents.  Speakman v. Allmerica Fin. Life
Ins., 367 F. Supp. 2d at 125-26, 142-43, n.3.  In other words,
the bulk of the allegations did not address the misconduct of a
defendant parent company and another defendant subsidiary
company.  Id.  In addition, these remaining allegations in
Speakman targeted "all defendants" as a group, i.e., including
the parent and the other subsidiary companies, and set out
allegations with specificity similar to the statements in the
proposed amended complaint.  See id. at 142-43.  Finally, it is
worth noting that the information regarding the internal
handling and adjustments of plaintiffs' insurance claim and the
roles played by each of the proposed defendants in the decision
to deny the claim is likely within the control of Federal and
the proposed defendants.  See Garcia-Catalan v. United States,
734 F.3d 100, 104 (1st Cir. 2013) ("'some latitude' may be
appropriate in applying the plausibility standard in certain

types of cases" such as "cases in which a material part of the information needed is likely to be within the defendant's control").  Accordingly, at *this* stage of the proceedings, the allegations in the proposed amended complaint are adequate and plausible to show the active role and involvement necessary in the investigation, handling, adjustment, and denial of the insurance claim.[22]

Federal and the proposed defendants next assert that the chapter 93A claim against the proposed defendants is untimely because it is "based solely on the defendants' denial of benefits under the Federal Policy."  (Docket Entry # 10, pp. 8-9) (citing and discussing <u>Nunheimer v. Cont'l Ins. Co.</u>, 68 F. Supp. 2d 75, 79 (D. Mass. 1999)).  It is therefore governed by the two-year statute of limitations under section 99, according to Federal and the proposed defendants.  (Docket Entry ## 10, 14).

Plaintiffs disagree and submit that "the three-year statute of limitations under M.G.L. c. 93A/176D would apply."  (Docket Entry # 13, p. 4).  Inasmuch as Federal and the proposed

---

[22]  Because Federal and the proposed defendants do not sufficiently raise an argument that the conduct of the proposed defendants violated the egregious business misconduct standard applicable under section 11, <u>see</u> <u>Peabody Essex Museum, Inc.</u>, 802 F.3d at 54 (setting out the standard), this court expresses *no* opinion on whether the allegations plausibly satisfy that standard.  Rather, they argue a lack of involvement in the investigation and their status as non-parties to the Policy.

defendants cite and discuss <u>Nunheimer</u>, 68 F. Supp. 2d at 79

(Docket Entry # 10, pp. 8-9, which cites the correct, *four*-year

chapter 93A statute of limitations at the same page, this court

construes plaintiffs' argument to mean that the four-year

statute of limitations applicable to chapter 93A claims in

general applies.  <u>See</u> Mass. Gen. Laws ch. 260, § 5A ("section

5A").  Federal and the proposed defendants are neither

prejudiced nor surprised because the tenure of their argument

urging the application of the two-year limitations period in

section 99 seeks to avoid the only other applicable statute of

limitations, namely, section 5A.  Finally, plaintiffs

alternatively argue that the chapter 93A claim relates back to

the filing of the original complaint under Fed. R. Civ. P.

15(c)(1)C) ("Rule 15(c)(1)(C)").[23]

---

[23]  Curiously, plaintiffs do not argue that the more-forgiving,
relation-back rule in Massachusetts, <u>see</u> Mass. R. Civ. P. 15(c)
(allowing relation back to the original complaint, "(including
an amendment changing a party)[,]" "[w]henever the claim . . .
arose out of the conduct, transaction, or occurrence set forth"
in the original complaint), applies under Fed. R. Civ. P.
15(c)(1)(A) ("Rule 15(c)(1)(A)").  <u>See</u> <u>Morel v. DaimlerChrysler</u>
<u>AG</u>, 565 F.3d 20, 25-26 (1st Cir. 2009) (Rule 15(c)(1)(A)
"applies in a diversity case" and "cements in place a one-way
ratchet; less restrictive state relation-back rules will
displace federal relation-back rules, but more restrictive state
relation-back rules will not"); <u>Palacio v. City of Springfield</u>,
25 F. Supp. 3d 163, 167 (D. Mass. 2014); <u>accord</u> <u>Labrador v.</u>
<u>Indus. Contractors' Supplies, Inc.</u>, Civil Action No. 13-13029-
MLW, 2015 WL 5737141 (D. Mass. Sept. 30, 2015) (denying motion
to dismiss to add new defendant notwithstanding expiration of
limitations period in light of the liberal Massachusetts
relation-back rule in Mass. R. Civ. P. 15(c)).

Section 99 sets out a two-year limitations period for "any claim by virtue of this policy . . . .." Mass. Gen. Laws ch. 175, § 99. The court in <u>Nunheimer</u> held that Nunheimer's claims for benefits for release of contaminants from an underground storage tank under his property insurance policies constitute claims "'by virtue of the policy'" and therefore subject to section 99's two-year limitations period. <u>Nunheimer v. Cont'l Ins. Co.</u>, 68 F. Supp. 2d at 80. The court reasoned that "allowing Nunheimer to bring claims under Chapters 93A and 176D based solely on a denial of benefits under a fire insurance policy would enable him to circumvent section 99," which "specifically establish[es] the two year statute of limitations for suits based on fire insurance policies." <u>Id.</u> at 79. A subsequent Massachusetts Appeals Court decision interprets <u>Nunheimer</u> as applying section 99's two-year limitations period to a chapter 93A claim when the claim is "no more than a reiteration of [a] contract claim under the guise of a c. 93A violation" that lacks "factual material to support activity[] independent of a claim under the policy[] violative of G.L. c. 176D." <u>Schwartz v. Travelers Indem. Co.</u>, 740 N.E.2d 1039, 1044 n.7 (Mass. App. Ct. 2001). In applying the four-year limitations period in section 5A, the court in <u>Schwartz</u> aptly reasons that the express inclusion of chapter 93A claims grounded in chapter 176D in section 5A "makes little sense

40

unless those claims are interpreted as independent from claims

arising out of the policy itself." Id. at 1043 (also

recognizing that "engaging in conduct prohibited by" chapter 176

"and made unfair and deceptive by" chapter 93A "creates an

action independent from the contract"). The court in Schwartz

therefore:

> conclude[s] that the statute of limitations set forth in
> the standard form contract found in G.L. c. 175, § 99, must
> be read as *inapplicable* to claims brought under G.L. c. 93A
> that are grounded in G.L. c. 176D. The alternate reading
> would make meaningless the specific inclusion of c. 176D
> actions in c. 260, § 5A, since all claims against the
> insurer, even those under c. 176D, if viewed broadly, can
> be seen as claims brought "by virtue of [the] policy."

Id. at 1044 (emphasis added).

Here, the proposed amended complaint grounds the chapter

93A claim as based on failing to conduct a reasonable

investigation of the insurance claim, see Schwartz at 1043

(describing "refusal 'to pay claims without conducting a

reasonable investigation'" as subsection 3(9) prohibitive

conduct that, "standing alone, would probably not constitute a

breach of contractual obligations contained in the policy"),

failing to effectuate a prompt and equitable settlement of the

insurance claim once liability became reasonably clear, and

asserting a coverage defense without a good faith basis.

(Docket Entry # 9-1, ¶ 62). The "factual material," Schwartz,

740 N.E.2d at 1043 n.7, to support this chapter 93A claim that,

41

in essence, tracks the language of subsections 3(9)(d) and (f) of chapter 176D, includes the video of the intruder in the home with the broken window used to gain access and the denial of the claim notwithstanding this evidence of a theft.  Drawing reasonable inferences from the facts in the proposed amended complaint, Federal and the proposed defendants focused their investigation on plaintiffs and plaintiffs' friends and family instead of exploring the evidence of the intruder breaking into plaintiffs' home.  In addition, they denied the insurance claim in part because "the jeweler who signed the [a]ppraisals was prohibited by the conditions of his probation from engaging in the jewelry business" even though they knew he was not the individual who conducted the appraisals.  (Docket Entry # 9-1, ¶¶ 36-37, 42-44).  Accordingly, like the circumstances in Schwartz and other cases in this district, the chapter 93A claim, grounded in factual allegations based on section 3(9) of chapter 176D, is independent of a claim under the policy and more than a repackaging of the "breach of contract claim under 'the guise of a c. 93A violation.'"  Ora Catering, Inc. v. Northland Ins. Co., 57 F. Supp. 3d at 109 (finding allegations that "defendant misrepresented policy provisions in its denial letter" sufficiently "'independent of a claim under the policy'" to apply section 5A to section 11 chapter 93A claim); see Morin v. Metro. Prop. & Cas. Ins. Co., Civil Action No. 16-10687-LTS,

42

2016 WL 9053346, at *2 (D. Mass. June 7, 2016) ("as the claim is not a mere repackaging of a breach of contract claim, a Chapter 93A claim premised on violations of Chapter 176D is not time-barred after two years from the date of loss"); <u>Schwartz v. Travelers Indem. Co.</u>, 740 N.E.2d at 1043-1044.  Hence, the four-year statute of limitations in section 5A controls rather than the two-year statute of limitations in section 99.[24]

As a final matter, the contractual provision in the Policy requiring plaintiffs "to bring any action against *us* within two years of the date of loss" does not bar the chapter 93A claim against the proposed defendants.  (Docket Entry # 10, p. 34) (emphasis added).  The Policy defines "us" as Federal, not any of the proposed defendants.  (Docket Entry # 10, pp. 19, 22).  The proposed defendants are not parties to the Policy and are therefore not bound by this provision, which applies to "us," i.e., Federal.

<u>CONCLUSION</u>

In accordance with the foregoing discussion, the motion to amend (Docket Entry # 9) is **ALLOWED** as to Counts I and II and

---

[24]  It is therefore not necessary to address plaintiffs' argument that section 99 only applies to claims under a fire insurance policy as opposed to a valuable articles policy.  (Docket Entry # 13, p. 3).  It is also not necessary to address the relation-back argument under Rule 15(c)(1)(C).

**DENIED** as to Count III.

       /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge